No. 26,928.

H. W. RIGDON, *Appellee*, v. THE FARMERS ALLIANCE INSURANCE
COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. WITNESSES—*Refreshing Memory—Use of Inventory.* In an action on a fire
insurance policy to recover for household goods destroyed by fire, a witness,
for the purpose of refreshing his memory, may use an inventory of the
articles burned to assist him in naming those articles and in stating their
value.

2. FIRE INSURANCE—*Proof of Loss—Evidence.* The demurrer of the defendant
to the evidence of the plaintiff was properly overruled.

3. SAME—*Policy—Proof of Contents—Instructions.* There was no error in re-
fusing to give instructions requested.

4. SAME—*Proof of Loss—Instructions.* There was no error in the instructions
given.

Appeal from Butler district court; GEORGE J. BENSON, judge. Opinion filed
December 11, 1926. Affirmed.

*Stephen H. Allen, Otis S. Allen* and *George S. Allen,* all of Topeka, for the
appellant.

*F. J. Oyler,* of Iola, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment on a fire in-
surance policy, and the defendant appeals.

The plaintiff signed an application for fire insurance on his house-
hold goods, and the policy was issued. Shortly thereafter, the goods
and the house in which they were situated were destroyed by fire.
The plaintiff made proof of loss, and the defendant refused to pay.
It pleaded that the policy had been procured upon false answers to
questions contained in the application and that the proof of loss was
false and fraudulent.

1. The defendant urges that "the district court erred in the ad-
mission of evidence offered by the plaintiff and objected to by the
defendant." During the examination of the plaintiff, he had in his
hands a memorandum which appears to have been an inventory of
the burned articles and of their value. The brief of the defendant
recites: "The plaintiff testified as a witness in his own behalf."

Fire Insurance, 26 C. J. pp. 550 n. 86, 566 n. 80, 567 n. 87. Witnesses, 40 Cyc.
p. 2455 n. 21; 28 R. C. L. 594.

Rigdon v. Farmers Alliance Ins. Co.

His counsel handed him some sheets of paper, and said:

"Q. I hand you these sheets of paper and ask you if you made that out together, you and your wife?

"The defendant objected to the question on the ground that it was irrelevant, immaterial and incompetent to prove any issue in the case. The court overruled the objection and the witness answered: 'It is.'

"Q. You may give your best judgment, after examining that, as to whether or not you had in the house at the time it was burned the goods mentioned there?

"The defendant objected to the question on the ground that the testimony called for was irrelevant and incompetent. The court overruled the objection and the witness answered: 'I did.'

"The plaintiff then proceeded to testify from the list to a large number of items and the value of them, and then said: 'I was looking wrong here—'

"Mr. Allen: We submit that the witness is just simply reading these items and these values from this paper that is before him.

"The objection overruled. Of course you shouldn't do that, however. You should fix the values from your personal knowledge of the specific articles about which you are being questioned and not substitute what somebody else told you it was worth.

"Q. Did you have, then, personal knowledge of those things? A. We did, yes.

"Q. Did you? A. I did."

The evidence disclosed that there was a large number of small items which had been burned. It was permissible for the plaintiff to use a written memorandum of those items for the purpose of refreshing his memory concerning the articles that had been destroyed by fire and concerning their value. (*State v. Baldwin,* 36 Kan. 1, 12 Pac. 318; *Sanders v. Wakefield,* 41 Kan. 11, 20 Pac. 518; *Garden City v. Heller,* 61 Kan. 767, 60 Pac. 1060; *Wilkes v. Coal Co.,* 95 Kan. 493, 148 Pac. 768; *Supply Co. v. Case,* 116 Kan. 520, 227 Pac. 257; 40 Cyc. 2452-2458.)

2. It is argued that "the defendant's demurrer to the evidence should have been sustained." The defendant in its brief says:

"Summing up the evidence introduced by the plaintiff, it shows that he made an application for insurance; that he can read; that he signed the application; that most of the essential statements contained in it were false and that it was presented to the defendant in that form.

"The evidence fails to show what property was described in the policy, and fails to show that any property was insured by it.

"The evidence of the plaintiff himself shows that he did not sign the by-laws indorsed on the policy and that nobody signed them for him.

"The plaintiff's own testimony shows that he perpetrated a fraud on the defendant by furnishing as his proof of loss a paper purporting to have been duly sworn to, which was not sworn to at all.

"The plaintiff failed to prove the cause of action set up in his petition. He affirmatively proved that his own fraud avoided and defeated any claim he might have had. The demurrer to the plaintiff's evidence should have been sustained and judgment rendered for the defendant."

We will notice these matters in the order in which they are presented in the brief of the defendant. The policy contained the following provision:

"The policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if the interest of the insured in the property be not truly and correctly stated in the application; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The application for insurance stated that the plaintiff owned the real property on which was situated the building in which the property was burned. He testified that he told the agent when the application was made that he did not own the real property. The plaintiff also testified that he did not authorize the agent to state that he did own that property. In *Blades v. Insurance Co.*, 116 Kan. 120, 225 Pac. 1082, the rule was declared to be that:

"In an action on an insurance policy where it is contended that the representations purported to have been made by the insured in an application for insurance prepared by a representative of the insurance company did not correctly state the questions asked and answers made by the applicant, oral evidence is admissible to show the questions actually asked and the answers given."

There, a number of cases are cited adhering to that rule.

The evidence to show what property was insured was contained in the application for the policy, and not in the policy issued. The policy itself was not in evidence; but a blank form of the policy issued was in evidence. The policy issued must have contained a description of the property which must have been the same as the description set out in the application. There was evidence sufficient to identify the property insured.

A blank form of the policy was introduced in evidence and contained the following:

"I hereby accept the foregoing by-laws, rules and regulations as a part of my contract with the Farmers Alliance Insurance Company."

It did not appear that the plaintiff signed the by-laws and regulations attached to the policy.

The statute concerning mutual fire insurance companies, section 40-441 of the Revised Statutes, in part, reads:

"Every policy issued shall have attached thereto a printed copy of the note and application, also a printed copy of the by-laws and regulations of the company, which shall be signed by the president and secretary of the company and the insured, and shall become a part of the contract between the insurer and the insured."

The written application which the plaintiff signed for insurance contained a power of attorney authorizing the secretary of the insurance company to sign the plaintiff's name to the by-laws. That part of the application read:

"And I hereby appoint the secretary of the Farmers' Alliance Insurance Company as my attorney in fact for the purpose of signing my name to the printed copy of the by-laws of said company, which shall appear upon the policy issued to me under this application, and I hereby bind myself by said by-laws so signed as fully as if personally signed by me as required by section 3500, General Statutes of 1901, and waive all irregularities as to the manner of making the said signature."

The foregoing provision of the application, found in the brief of the appellee, is not challenged by the defendant. There was a sufficient compliance with the statute and with the terms of the policy to enable the plaintiff to recover.

The complaint concerning the fraud perpetrated by the defendant in furnishing his proof of loss is based on the following evidence:

"Q. That is the only proof of loss you have furnished in this case?

"Mr. Oyler: We will admit it is, your honor, so far as we know.

"Q. Mr. Rigdon, was this proof of loss filled out when you signed it? A. The proof of the loss there?

"Q. Yes? A. It was not. Not that paper.

"Q. It wasn't filled out? A. When I signed it?

"Q. Do you mean to tell the jury that you signed and swore to a blank paper as proof of loss and then left it to be filled out? A. I left the list which I have in my hand at the present time for that to be copied on. Mr. Bond says: 'Just sign this affidavit, and I will take care of the rest.'

"Q. You signed it when it was blank? A. With this on the desk by it.

"Q. You have never compared that list with this to know whether they are the same? A. They have been compared.

"Q. Have you ever compared them? A. Not with the paper you have in your hand. (The original proof of loss.) I have compared them with copies of that.

"Q. Are they the same? A. Practically.

"Q. Does that list that you have there contain an item of a trunk packed with hand crochet work of the value of $500? A. It does.

"Q. It does contain that? A. Yes, sir.

"Q. That item does not appear to have been included in the list attached to your petition in this case. Do you know why it was not included in the list? A. I do not know why."

That evidence did not show that any fraud was being practiced by the plaintiff in making proof of loss.

The demurrer to the evidence was properly overruled.

3. It is argued that "the district court erred in refusing to give the instructions asked by the defendant." The first instruction referred to directed the jury to return a verdict in favor of the defendant. The second one was as follows:

"That it was incumbent in this case on the plaintiff to prove the contents of the policy sued on. The plaintiff has failed to prove by any evidence what provisions were contained in the policy, and your verdict must therefore be for the defendant."

We quote from the brief of the defendant:

"No proof whatever of the contents of the policy was offered by the plaintiff in his evidence in chief. None was offered by the defendant. The application was not introduced. . . . After the conclusion of the testimony and after both parties had rested, the following proceedings were had:

"THE COURT: Do I understand that the application is not in evidence?

"MR. OYLER: I want the application in evidence, your Honor. I offer that part of the application that I called Mr. Klotz' attention to where he made his report to the company.

"MR. ALLEN: We certainly object to the acceptance of a part of the application and insist that it be put in as a whole or not at all.

"THE COURT: It is considered that the application and the report on the back made by Mr. Klotz is all in evidence."

There was evidence which tended to prove that an application for insurance on the household goods had been made by the plaintiff to the defendant, and that in response to that application the defendant issued to the plaintiff a policy of insurance. The blank form of policy introduced in evidence contained all the provisions of the policy except a description of the property insured and some other matters not here material. The instructions requested were properly refused.

4. The defendant argues that "the district court erred in its instructions given to the jury." We quote from the brief of the defendant as follows:

"The eighth instruction given by the court to the jury begins with the sentence:

"'8. It has been shown by the evidence that after the fire the plaintiff pre-

pared and submitted to the defendant certain proofs of loss, which have been offered in evidence.'

"The court then proceeds to state the claim of the defendant set up in the answer that the proofs were false and fraudulent, and to state the law on the subject of such false statements. The instruction ignores the statement of the defendant showing that he did not swear to the proof at all, that he merely signed a blank to be thereafter filled up, and that the paper filled out by some person other than himself was afterward sent to the defendant as his proof of loss."

This matter has been noticed in discussing the proof of loss. On its face, it appeared to have been sufficient. The irregularity, if any there was, in making out that proof of loss is not sufficient to excuse the defendant from paying under the policy.

It is urged that the court erred in overruling the defendant's motion for a new trial. This matter depends on the conclusions that have been reached concerning the other matters complained of and need not be further discussed.

The judgment is affirmed.