No. 36,805

THE STATE OF KANSAS, *Appellee*, v. VERNON McCOMBS, *Appellant*.

(181 P. 2d 473)

C. A. SPENCER, judge. Opinion filed June 7, 1947.

*Ralph H. Noah*, of Beloit, argued the cause, and *R. W. Young*, of Beloit, was with him on the briefs for the appellant.

*J. H. Jenson,* of Oakley, argued the cause, and *Edward F. Arn,* attorney general, *Harold R. Fatzer,* assistant attorney general, and *Earl Artley,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The defendant was prosecuted and convicted under the provisions of G. S. 1935, 21-435. He was sentenced under the habitual criminal act, G. S. 1945 Supp. 21-107A. His appeal does not involve the sentence imposed pursuant to that act but pertains to errors alleged to have been committed in the trial of the action.

Appellant contends the verdict cannot stand for the reason one of the jurors was a nonresident of Logan county in which the alleged offense was committed and tried; that section 10 of our bill of rights guarantees a trial by "an impartial jury of the county or district in which the offense is alleged to have been committed." Our attention is directed to *In re Oberst,* 133 Kan. 364, 299 Pac. 959, in which it was held:

"R. S. 62-1322 does not give the district court authority to change the venue of a criminal prosecution pending before it without the consent of and over the objection of the defendant.

"Section 10 of the bill of rights of the constitution of Kansas guarantees to one charged with crime the right to be tried by a jury of the county where the offense is alleged to have been committed, and any statute which contravenes that right is unconstitutional." (Syl. ¶¶ 1, 2.)

It is observed that in the Oberst case the defendant was compelled to go to trial without his consent in a county entirely outside the one in which the offense was alleged to have been committed.

In the instant case defendant was tried in Logan county in which the offense was alleged to have been committed. The one juror, a farmer, concerning whom complaint is made, had lived in Logan county for six years prior to the trial and also until approximately one month prior to the trial. He then moved across the line into the adjoining county of Gove. The pertinent part of his *voir dire* examination was:

"Q. You may state your name. A. Elmer Russell.
"Q. Where do you live? A. Monument.
"Q. How long have you lived in Logan County? A. About 6 years."

The pertinent testimony of the juror on motion for a new trial was—

"Q. Where do you live, Mr. Russell? A. I live over in Gove County.
"Q. Now? A. Yes.

"Q. Where did you live at the time you sat on the jury here in this case. A. Gove County.

"Q. How long had you lived in Gove County at the time you were a juror in this matter? A. Well, I don't remember, a month or so.

"Q. You lived up there by Monument? A. Yes, sir.

"Q. And in your examination as a juror, you said your post office address was Monument, didn't you? A. I don't remember.

"Q. Where does your family live now? A. Down there where I live.

"Q. Whose place are you on? A. It is known as the Jordan place."

There is no contention Russell was not legally selected for jury service in Logan county prior to moving to Gove county.

G. S. 1935, 43-102, in part, provides:

"They shall select from those assessed on the assessment roll of the preceding year suitable persons having the qualifications of electors. . . ."

There is no intimation or contention Russell sought his selection as a juror or that he deliberately misrepresented his residence on his *voir dire* examination. The town of Monument is located in Logan county. While the evidence does not disclose how far across the line in Gove county his new residence was, appellee advises, and appellant does not contend otherwise, that it was only a few miles from where he previously resided in Logan county. It also will be observed that on the motion for a new trial it was indicated the juror "lived up there by Monument" and that he did not remember whether on his *voir dire* examination he stated his post-office address was Monument. These various circumstances, of course, are mentioned only to show there was no evidence of the juror's bad faith. It is common knowledge that farmers when stating their residence ordinarily mention the town nearest their residence, their post-office address or the town in which they trade. Appellant does not contend Russell did not prove to be an entirely fair and impartial juror. A review of the record touching the motion for a new trial discloses no evidence that appellant or his counsel did not know where Russell resided or that in the exercise of reasonable diligence they could not have discovered such fact or that the juror would have been challenged had they known it. Appellant's peremptory challenges were not exhausted. It is not claimed the state knew Russell had moved into Gove county. Appellant merely argues the verdict should be set aside for the reason the juror did not actually reside in Logan county at the time of the trial.

Entirely unlike the Oberst case defendant, in the instant case, was

tried by twelve jurors who were legally selected for jury service pursuant to law and who at the time of their selection were residents of the county in which the alleged offense was committed. If any of the ·jurors were later disqualified for any reason appellant was privileged to exercise his statutory right of challenge.

In *State v. Jackson*, 27 Kan. 581, the defendant was prosecuted for murder in the first degree. It was held the fact two jurors were not electors did not absolutely disqualify them but that it was a ground for challenge. It was further held that an objection to such disqualification was too late when made after the verdict had been rendered. It was emphasized that this was particularly true where the disqualification results in no prejudice to any substantial right.

In *State v. Ready*, 44 Kan. 700, 26 Pac. 58, it was held:

"Where an objection to the competency of a juror, namely, that he had served as a juror in the same court in another case within the preceding year, is first raised after verdict, and the party objecting fails to show that the ground of challenge was unknown to him and his counsel when the juror was accepted, or that he would have exercised his right of challenge if he had known that the cause therefor existed, or that he has suffered any prejudice by the retention of the juror, the objection will not be available for the purpose of obtaining a new trial." (Syl.)

In *Schuchmann v. Kansas City*, 156 Kan. 282, 133 P. 2d 132, the facts touching the question of a juror's residence in Wyandotte county were in dispute. After indicating there were facts upon which the trial court could properly conclude the juror's residence was in that county, we said:

"More than that, since the question had not been raised until after the verdict the rule seems to be that it was too late. (See *State v. Jackson*, 27 Kan. 581; *State v. Hilbish*, 126 Kan. 282, 284, 267 Pac. 1109, and authorities there cited.)" (p. 284.)

See, also, *Leeper and Powell v. State*, 29 Tex. Ct. App. 63, 14 S. W. 398; *Rockwell v. Elderkin*, 19 Wis. 388; *People v. McFarlane*, 138 Cal. 481, 71 Pac. 568; 39 Am. Jur., New Trial, § 42.

Appellant also relies on *Kerby v. Hiesterman*, 162 Kan. 490, 178 P. 2d 194. The facts there went directly to the question of the juoror's partiality. His answers on the *voir dire* examination were false. They prevented further inquiry concerning a fact which went directly to his possible, or probable, partiality. In the instant case there is no contention the answers of the juror were made in bad faith or that he was not an entirely impartial juror.

Appellant complains an attorney not employed by the county

commissioners but who was merely selected by the county attorney to assist him should not have been permitted to participate in the prosecution. There is nothing in the record to indicate the county attorney was not at all times in full control of the prosecution or that any prejudice resulted to appellant's substantial right by reason of such assistance. The assisting attorney had served as county attorney during the regular county attorney's military service overseas pursuant to the provisions of G. S. 1945 Supp. 73-215. The mere fact counsel was willing, under the circumstances, to assist the county attorney without employment and compensation by the county is not ground for disturbing the verdict.

Appellant contends the court erred in overruling his motion to elect upon which of two separate and distinct affrays the state would rely for conviction. He contends the first affray constituted merely assault and battery which resulted in no substantial injury; that the second affray which resulted in serious injuries was not caused by the use of appellant's fists or feet, as charged in the information, but by a tackle which resulted in Cloyd's head striking the cement sidewalk. The evidence amply disclosed appellant deliberately attacked Cloyd and that while technically it might be said there were two assaults there was in legal contemplation only one affray. The two assaults were part of one and the same complete affray. The time between the attacks was momentary. It lasted only long enough for some of the bystanders to separate appellant from his victim. Appellant immediately made the second attack. The motion to elect was properly overruled.

Appellant argues his demurrer to the state's evidence should have been sustained. The substance of this contention is likewise that only the offense of assault and battery was established by the evidence. We cannot agree. The injuries sustained by Cloyd, including his serious skull injury, were the result of the complete affray. Appellant's vicious assault with his hands, fists and feet was terminated only after he had beaten, tackled and thrown Cloyd onto the cement sidewalk, kicked him and left him helpless and unconscious. The evidence was entirely sufficient to go to the jury on the charge of assault with intent to kill.

Appellant contends the court erred in admitting evidence of another offense in connection with the cross-examination of appellant's wife and that a specially requested instruction should have been given relative to the effect of such testimony. In the course of appel-

lant's wife's cross-examination she was asked by the state whether she had not lived with appellant prior to 'their marriage. Appellant's counsel did not object to the question on the ground it was an attempt to prove appellant guilty of another and unrelated offense. In fact, the objection was not on any legal ground. Appellant's counsel only characterized the question as contemptible. The court overruled the objection for the reason it was not a proper objection. No other objection was made. Thereupon the witness answered the question in the affirmative. There was no further inquiry. There was no motion to strike the answer. In the absence of some specific legal ground for the objection the order overruling it is not reviewable. The state concedes the offense was not similar to the one for which appellant was on trial and that the question was not intended to show the commission of another offense by appellant. The state contends it had the right to cross-examine this witness for the purpose of testing her credibility. For that purpose the question was, of course, competent. (*State v. Rafferty,* 145 Kan. 795, 800, 67 P. 2d 1111.)

We think the court might well have given the requested instruction that the testimony of the witness could be considered only for the purpose of testing her credibility. There is, however, no indication the testimony was stressed and appellant does not contend the state argued to the jury that it could be considered for any purpose other than to test the credibility of the witness. Under the circumstances of this case we are not inclined to grant a new trial by reason of the court's failure to give the requested instruction.

It is urged the court erred in admitting technical medical testimony of an osteopath, without proper foundation having been laid, relative to the nature and extent of injuries suffered by Emil Cloyd, the assaulted person, and in admitting testimony of the witness relative to what certain X-ray plates, made by agreement of the parties by the staff doctor at the St. Thomas Hospital of Colby, disclosed concerning injuries to Cloyd's skull. Touching the first point of the objection we need only say the testimony did not pertain to technical medical subjects but to anatomy, the fracture of the skull and its effects on the patient. The witness was a graduate of the American School of Osteopathy at Kirksville, Mo. While in school the witness had examined hundreds of X-ray plates for the purpose of familiarizing himself therewith and to be able to understand what they disclosed. He also had observed and studied

X-ray plates during his practice but the latter experience had been much more limited than it was during his educational training at Kirksville.

The testimony pertained to the witness's own examination of Cloyd's skull. With respect to the reading of X-ray plates the record amply discloses the educational training and experience of the witness combined clearly qualified him to testify concerning the fractures disclosed by the X ray in question.

Counsel for appellant cross-examined the witness at length on all parts of his direct examination. No other witness was produced to dispute any of his testimony. The objection to his testimony was properly overruled.

It is argued the verdict cannot stand for the reason the jury was guilty of misconduct in that it considered evidence outside the record, namely, that appellant drank a good deal and that when he did so he was inclined to fight. The point is not well taken. Testimony of the jurors on motion for a new trial disclosed they discussed these facts but that they were developed in the course of the trial and that counsel for appellant argued those facts to the jury.

It is urged the trial court erred in various instructions given and in refusing to give certain requested instructions. A careful review of all instructions given convinces us they correctly stated the law of the case and that reversible error was not committed in refusing the requested instructions. The complaints are too technical. Under the express provisions of G. S. 1935, 62-1718, appellate courts are required to render judgment without regard to technical errors which do not affect the substantial rights of the parties.

Appellant asserts the trial court erred in accepting a verdict improper in form. The verdict of guilty conformed to the pertinent language of the statute. The intent of the jury was unmistakable. That was sufficient.

It is finally contended the motion for a new trial should have been sustained. The grounds of the motion have been treated under the respective complaints. The record in this case leaves no doubt the verdict was supported by strong and convincing evidence. We think appellant had a fair and impartial trial.

The judgment is affirmed.

HOCH, J., not participating.